Freeman, J.,
delivered the opinion of the court.
Without giving a detailed statement of the pleadings or the evidence in this case, it suffices to state that the only real question involved is, whether a lot of laud of about twelve acres, within the corporate limits of Tullaboma, is public property, dedicated by the original owner of the soil to public use as a public square, for the use of the citizens of said town.
We have carefully examined the case, and'feel no hestitancy, in holding with the chancellor, that such is the fact.
The principle is settled, and so far as we can see, is uncontroverted by any authority, that a common law dedication of land to a public use in a case like the present, may take place at. once if the act of dedication is unequivocal, and others have acted on the question in view. See [Scott v. State], 1st Sneed, 629. Mr. Dillon says of such dedication the rule is as follows: “While a mere survey of .land by the owner into lots, defining streets, squares, etc., will not, without sale, amount to a dedication, yet a sale of lots with reference to such plat, or describing lots as bounded by streets, etc., will amount to an irrevocable and immediate dedication, binding on both vendor and vendee. Vol. 2, section 503 ” [3d ed., sec. 640],
'As against the proprietor, a dedication of land for streets and highways may he complete without any act of acceptance on the part of the public; but in order to charge the municipality or local district with the” duty to repair, to malee it liable for injuries for suffering the street or highway to remain defective, there must be an acceptance of the dedication. This acceptance may be express or implied. Section 505 [3d ed., sec. 642].
Admitting these principles, the case is clearly made out. It appears that in the laying out of the town, the propane- *328 tors caused a map to be made, in which this ground was designated as a “public square;” that lots were laid off in reference to this fact. That afterwards these lots were sold and purchased under reference to this fact, probably influencing, to a considerable extent, these purchasers.
The proprietors for a great number of years maintained this view of it, and so represented it to all; acting on this idea it was never listed for taxes from 1851, nor even attempted, we believe, until probably in 1868. About that time, or it may have been sometime before, one of the parties, Gen. Moore, who had laid off the town, claimed to be sole owner of the land, and desired to list it for taxes, which was refused by the town authorities. Ultimately, it was sold by representatives of his estate, when the sale was forbidden by the municipal authorities, and this suit was instituted to settle the rights of the parties.
The fact is, the town was laid off on a large plan, and with large expectations of future growth and development. In the realization of this sanguine dream of its projectors, there has been as yet a signal failure. Finding themselves disappointed, this proprietor concluded, evidently, that he had the right to resume his original rights, as there seemed no pressing public need for the ground as a public square, nor much prospect of any demand that it should be used for its orignial design. The answer to the assertion of this right now, is that the control has passed from him long since, the public have acquired fixed rights, others have invested their money in view of the state of things represented when anticipations were earnest of quite a different result, and now it is too late to- undo that which has thus been done. As to whether the corporate authorities have used this land according to the original idea, or done their duty to the public, this is a different question but does not change the rights of the original proprietors, other parties having been influenced in their purchases by the representations made, and the unequivocal acts of dedication shown *329 in this record. [Cincinnati v. White], 6 Peters’ R., 184, Curtis’ Ed. [Original edition, 438, L. ed. Book 8, p. 456.]
Without further discussion, let the decree of the chancellor be affirmed with costs.